**AMERICAN SAINT GOBAIN CORPORATION, Plaintiff,**

v.

**ARMSTRONG GLASS COMPANY, Inc., Defendant.**

No. 2247.

United States District Court
E. D. Tennessee,
Northeastern Division.

April 24, 1969.

Ernest F. Smith, Kingsport, Tenn., Robert J. Kadel, and Berj A. Terzian, Pennie, Edmunds, Morton, Taylor & Adams, New York City, for plaintiff.

Ferdinald Powell, Jr., Johnson City, Tenn., E. M. Luedeka, Knoxville, Tenn., for defendant.

## MEMORANDUM OPINION AND ORDER

NEESE, District Judge.

These parties consented to the entry on October 9, 1968 of a judgment herein that the defendant Armstrong Glass Company, Inc., a Tennessee corporation, had *inter alia* theretofore infringed United States Letters (the Bundy) Patent No. 3,273,706, owned by the plaintiff American Saint Gobain Corporation and permanently enjoining the defendant and others specified from the further infringement of the patent, by using glass pallet packages such as are described and claimed in that patent. On motion of the plaintiff, the Court issued a citation, ordering the defendant to show cause why it should not be held in contempt of this Court for violation of the consent judgment. An evidentiary hearing on such order was held before the Court on March 24–25, 1969. The time alloted for supplementation of materials submitted to the Court has now expired.

While so enjoined, the defendant Armstrong used in this district in the shipment of its glass products a pallet package, concededly similar in many respects to the plaintiff's patented package. Armstrong claims, however, that it is not in contempt, because:

a.) its package included, in addition to two end caps, a bottom member, and another "gate"-like side member, all held together by steel strapping; while, the patented structure included two end caps only, with attached cross rails and steel strapping to hold them together against the glass bundle;

b.) its package supports the glass in the bundle with the bottom member, which raises the glass sheets above the cross rails and assures that the bottom corners of the glass sheets rest on nothing; while the patented structure brings the sheets of glass into "edge-bearing contact" with each rail; and

c.) only one side of the end caps on its package bears against a side of the bundle of glass sheets, with the opposite side of the bundle's being in contact with the "gate-type" member; while the end caps of the patented structure have an end and sides which cover and bear against the ends and a part of the sides of the bundle.

Unless governed otherwise because of an amendment in the inventor's claim 1 in his application for the patent, *infra,* it is the opinion of this Court that the two glass pallet packages under consideration are identical, performing substantially the same function in substantially the same way to accomplish the same result; and thus, that under the doctrine of equivalents, the defendant Armstrong has stolen away since October 9, 1968, within the jurisdiction of this Court, the benefit of the plaintiff's invention. See Graver Tank Co. v. Linde Air Prod. Co. (1950), 339 U.S. 605, 608–609, 70 S.Ct. 854, 94 L.Ed. 1097, 1102 (headnotes 3, 4), adhering to the judgment in 336 U.S. 271, 69 S.Ct. 535, 93 L.Ed. 672.

During the prosecution of his patent, an examiner rejected *inter alia* Bundy's claim 1 as being fully met by United

States letters (Koester) patent no. 2,692,064. Mr. Bundy had claimed:

" * * * A pallet package of sheet glass comprising a bundle of flat glass sheets in closely packed side-by-side arrangement with the flat surfaces upright and secured in a container having two end caps, an end cap over each of two opposite ends of the bundle, each end cap comprising a cross rail in transverse position with respect to the sheets of the bundle on which the ends of the bundle rest with the sheets in edge-bearing contact with each rail, each end cap being attached to a rail and having an end and sides which cover and bear against the end and a part of the sides of the bundle at the end respectively, at least one metal band surrounding the bundle and end caps which holds the sheets together and the end caps in pressed contact with the ends of the bundle, and means which hold the bundle sufficiently above a floor or the like for the insertion thereunder of the fork of a lift truck."

The inventor Bundy then amended his patent application so as to read as follows (the elided material being bracketed and italicized and added material being italicized):

" * * * A pallet package of sheet glass comprising a bundle of flat glass sheets in closely packed side-by-side arrangement with the flat surfaces upright and secured in a container having two end caps, an end cap over each of two opposite ends of the bundle, each end cap comprising [*a*] *an attached* cross rail in transverse position with respect to the sheets of the bundle on which the ends of the bundle rest with the sheets in edge-bearing contact with each rail, each end cap [*being attached to a rail and*] having an end and sides which cover and bear against the end and a part of the sides of [*the bundle at the end respectively, at least one metal band*] *the bundle, metal bands* surrounding the bundle and *both* end caps which hold[*s*] the sheets together and *provide the only*

*means which hold* the end caps in pressed contact with the ends of the bundle, and *elevating* means *on the cross-rails* which hold the bundle sufficiently above a floor or the like for the insertion thereunder of the fork of a lift truck."

The patent examiner, in accordance with telephone interviews, added subsequently another amendment to the amended application, so that it then read, as follows (the added word being italicized):

" * * * A pallet package of sheet glass comprising a bundle of flat glass sheets in closely packed side-by-side arrangement with the flat surfaces upright and secured in a container having two end caps *only*, an end cap over each * * * ", etc.

The defendant Armstrong argues that the amendments indicated, *supra*, constitute limitations on Mr. Bundy's claims suggested by the Patent Office and acquiesced in by him; and that the plaintiff, as owner of the Bundy patent, is now estopped to deny the limiting effect of the language in the claim, because these limitations were adopted to avoid the earlier grounds of rejection and refusal to obtain allowance of the patent. Parke, Davis & Co. v. American Cyanamid Co., C.A. 6th (1953), 207 F.2d 571, 574 [3] citing decisions of the Supreme Court. This is true; however, it is urged that the significant amendment was the addition of the word, only, *supra*, which has the effect of limiting the Bundy patent to glass pallet packages which include no members except the two steel bands holding two end caps only against the bundle of sheet glass, so that Armstrong's version which includes two steel bands holding two end caps only against bundles of sheet glass, as well as an attached (toe-nailed) bottom member and an unattached "gate-type" side member, is not equivalent to the patented structure. This is erroneous.

The latter change in the Bundy application was made in the form of the correction of an obvious informality therein by the patent examiner. Order Number

3141 of February 4, 1930 (Manual of Patent Examining Procedure 1302.04). This amendment was of a formal or editorial nature. 2 Walker on Patents, 864, The Patent Application, § 181. It lacked the limiting effect on the Bundy patent ascribed to it by the defendant.

The use by the defendant Armstrong of its aforementioned glass pallet packages violated the injunction of this Court herein and subjects the defendant to penalty for contempt. 18 U.S.C. § 401. After having admitted infringing the plaintiff's patent, the defendant blatantly commenced another infringing practice while proscribed from such infringement by this Court. *Cf.* Baltz v. Walgreen Co., D.C.Tenn. (1961), 198 F. Supp. 22, 25 [1] and National Rejectors v. A. B. T. Mfg. Corp., C.A. 7th (1951), 188 F.2d 706, 710 [11].

The Court hereby finds and concludes that the defendant Armstrong Glass Company, Inc., is guilty of contempt of this Court's lawful order of October 9, 1968 herein. The parties having stipulated that, if the defendant be held in contempt, reference will be made to a special master to determine and report the damages the plaintiff has sustained in consequence of the defendant's contempuous conduct, as a basis for the imposition of a fine upon the defendant; and, local counsel having both suggested the name of S. J. Milligan, Esq., as such special master; and the Court noticing judicially that Mr. Milligan is a member of the bar of this Court and a former special justice of the Tennessee Supreme Court and a former special judge of the Tennessee Court of Appeals, and well qualified to receive the detailed and technical evidence now in issue, it hereby is

Ordered that this action is referred to S. J. Milligan, Esq., as special master to take and hear the evidence offered by the respective parties and to make his findings and conclusions on all issues of damages presented and to recommend the judgment to be entered thereon. The special master hereby is authorized and empowered to do all things and make such orders as may be required to accomplish a full hearing on all matters of fact and law on this issue herein. The special master hereby is directed to commence the hearing hereof within ten days and to proceed promptly with the same.

Counsel for the parties will exchange and file briefs within five days after the close of the hearings. The special master will submit to local counsel for the parties his draft report within ten days after receiving the briefs. Such counsel will submit to the special master any suggestions with respect to the draft report within three days after receiving the same. The special master will file his final report within five days after receiving any suggestions of counsel with respect to the draft report.

Jurisdiction of the entire action is retained meanwhile by this Court.